**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1963
_____

FRATERNAL ORDER OF POLICE, LODGE 1;
JOHN WILLIAMSON; ANTHONY GALIAZI;
CHARLES J. HOLLAND, also known as CHAD,
                              Appellants

v.

CITY OF CAMDEN; SCOTT THOMSON, CITY OF
CAMDEN POLICE CHIEF; ORLANDO CUEVAS, CITY
OF CAMDEN POLICE INSPECTOR; LIEUTENANT
JOSEPH WYSOCKI
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-10-cv-01502)
District Judge: Hon. Noel L. Hillman
_____

Argued January 12, 2016
_____

Before: McKEE,* *Chief Judge*, AMBRO and SCIRICA,
*Circuit Judges.*

(Opinion Filed:  November 17, 2016)
_____

---

* Judge Theodore McKee concluded his term as Chief of the
United States Court of Appeals for the Third Circuit on September
30, 2016.  Judge Brooks Smith became Chief Judge on October 1,
2016

Gregg L. Zeff, Esq. **[ARGUED]**
Zeff Law Firm
100 Century Parkway
Suite 305
Mount Laurel, NJ 08054

 *Attorneys for Appellants*

John C. Eastlack, Jr., Esq. **[ARGUED]**
Daniel E. Rybeck, Esq.
Weir & Partners
457 Haddonfield Road
Suite 420
Cherry Hill, NJ 08002

 *Attorneys for Appellees*

_____

OPINION OF THE COURT
_____

McKEE, *Chief Judge*.

This case arises from a vigorous dispute between the Fraternal Order of Police, Lodge 1 as well as certain police officers ("Plaintiffs") on one side, and the City of Camden, New Jersey and certain supervisory police personnel ("Defendants") on the other. Plaintiffs claim that the City's "directed patrols" policy constitutes an illegal quota system. Specifically, they allege that the policy violates New Jersey's anti-quota law. They also accuse Defendants of illegal retaliation in violation of New Jersey's Conscientious Employee Protection Act ("CEPA"), the First Amendment, and the Family and Medical Leave Act ("FMLA").

The district court granted summary judgment to Defendants on all of Plaintiffs' claims. For the reasons set forth below, we will reverse in part, affirm in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

2

In 2008, Camden implemented a policy known as "directed patrols" requiring police officers to engage with city residents even though the residents are not suspected of any wrongdoing. The announced purpose of the program was to obtain information about the community while making the police presence more visible. The City claims that the purpose was also "to ensure that the maximum amount of resources was allocated to a proactive crime prevention strategy and better balance [the Police Department] response to community-generated calls."[1] The directed patrols program consisted of "a structured 15-20 minute deployment into a targeted area to accomplish a specific patrol or crime reduction function."[2] According to the City, the deployment was to last no more than 15 to 20 minutes absent extenuating circumstances. The policy also instructed officers to obtain personal information, such as the name and address of the individuals the officers interacted with, if the individuals agreed to provide it. During any encounter with residents, officers were also expected to "approach community members present and inquire about criminal activity or quality of life issues."[3]

According to the City, directed patrols in Camden were not new. "[T]he difference in the new system was that directed patrols would be tracked and recorded. Under the new violence reduction initiative, directed [p]atrols were to be logged by the [City's] Computer Aided Dispatch System."[4]

In April 2009, Fraternal Order of Police, Lodge 1 filed a complaint against the City of Camden Police Department and the Attorney General of the State of New Jersey claiming Camden had imposed an unlawful quota policy. Officers on supplemental patrol were expected to conduct a minimum of twenty-seven directed patrols per shift and officers on regular patrol were expected to perform a minimum of eighteen. According to Plaintiffs, failure to comply with these

---

[1] Defendants' Br. at 1.
[2] *Id.*
[3] *Id.* at 2.
[4] *Id.* at 1.

3

numerical requirements is cause for disciplinary action. Plaintiffs claim that this results in a quota system of policing in violation of N.J.S.A. 40A:14-181.2.

The individual plaintiffs Officers Galiazzi, Holland, and Williamson further allege that Defendants violated CEPA by retaliating against them because they expressed their disagreement with the policy. Officers Galiazzi and Holland claim they were placed on a low-performer list for failure to comply with the policy. They also contend the retaliation included transfer from the elite unit, where they had been assigned, to regular patrol duty with a concomitant pay decrease. To support this assertion, they point out that another officer on the low performer list who did not object to the policy was not transferred.

Officer Williamson, the President of Fraternal Order of Police, Lodge 1, claims Camden retaliated against him for leading a protest march to City Hall. Specifically, he asserts that the City retaliated by bringing disciplinary charges against him for purportedly accosting a nurse at a hospital and for failing to report that someone had a thumb drive with Camden Police Department information.

Plaintiffs also allege other forms of retaliation that included revocation of vacation time, disciplinary limits on sick leave, and surveillance by Camden's Internal Affairs unit. Officer Holland claims that the restrictions on his sick leave also violated his rights under the FMLA. Finally, Plaintiffs assert that Camden's retaliatory conduct also ran afoul of the First Amendment because the plaintiff-officers' objections to the policy constitute protected speech.

New Jersey's anti-quota law only prohibits numerical requirements for arrests or citations.[5] Thus, Camden's primary defense is that the patrols policy at issue here is not an illegal quota because it does not require a certain number of arrests or citations, only police-civilian interactions. In any event, Defendants argue that there was no causal connection between the plaintiff-officers' objections and any adverse

---

[5] N.J. Stat. Ann. § 40A:14-181.2 (West).

actions, and this precludes any violation of CEPA or Plaintiffs' First Amendment rights.

As we noted at the outset, the district court granted Defendants' motion for summary judgment in its entirety and entered judgment against all plaintiffs on all of their claims. The court concluded that New Jersey's anti-quota statute is inapplicable to the patrols policy and thus cannot support Plaintiffs' allegations of a quota.[6] It dismissed Plaintiffs' CEPA[7] and First Amendment[8] claims because it found that, even viewing the evidence in the light most favorable to Plaintiffs, they did not establish a causal link between their whistleblowing activities and the alleged adverse actions. Finally, the court found Officer Holland failed to establish a *prima facie* FMLA violation because he did not show that he was precluded from using sick leave or that he was otherwise prejudiced by Camden's actions.[9] This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331. It had supplemental jurisdiction to hear their state law claims pursuant to 28 U.S.C. § 1367. The grant of summary judgment constitutes a final order. Thus, we have appellate jurisdiction under 28 U.S.C. § 1291.

We review grants of summary judgment de novo, applying the same standard as the district court.[10] Accordingly, we view the evidence in the light most favorable to the nonmoving party. In doing so, we refrain from weighing the evidence and draw all reasonable inferences in the nonmovant's favor.[11] We will affirm the

---

[6] *Fraternal Order of Police, Lodge 1 v. City of Camden*, No. CIV. 10-1502 NLH AMD, 2015 WL 1471800, at *4 (D.N.J. Mar. 31, 2015).

[7] *Id.* at *7.

[8] *Id.* at *8.

[9] *Id.* at *9.

[10] *See Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013).

[11] *See Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d

district court's grant of summary judgment only if we conclude that there is no genuine dispute as to any material fact when the evidence is so viewed.[12]

## III. DISCUSSION

As summarized at the outset, Plaintiffs claim that the district court erred in dismissing their claims under (1) New Jersey's anti-quota law; (2) CEPA; (3) the First Amendment; and (4) the FMLA. In addition, they argue that the district court erred when it ignored hearsay evidence and concluded that Defendants were entitled to judgment as a matter of law. We discuss each claim of error in turn.

### A. Hearsay

The district court was troubled that some of the evidence Plaintiffs planned to produce at trial was hearsay. That evidence consisted of statements by the individual plaintiffs about statements other officers purportedly made concerning the alleged retaliation and the nature of the patrols. This evidence is hearsay. However, the court erred in refusing to consider it at the summary judgment stage. Its explanation for concluding that it could not consider hearsay in ruling on a motion for summary judgment is limited to the following footnote:

> Galiazzi and Holland state in their depositions that they were told by other officers that they were transferred and investigated because of what they wrote on their counseling forms with regard to the quota system. The Court cannot consider this inadmissible hearsay, and no affidavits or testimony from these officers is provided as part of the record.[13]

---

Cir. 2004).

[12] FED. R. CIV. P. 56(a).

[13] *Fraternal Order of Police*, 2015 WL 1471800, at *5 n.9.

We disagree. "[T]he rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are *capable of being admissible at trial*."[14] In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial.[15] The proponent need only "explain the admissible form that is anticipated."[16] Thus, in ruling on Defendants' motion for summary judgment, the district court should have limited its inquiry to determining if the out-of-court statements Plaintiffs were relying on were admissible at trial, and they clearly were. Plaintiffs identified the out-of-court declarants—Sergeants Frett, Moffa, and Whitesell, and Lieutenants Cook and Strang—and noted their availability to testify.

In arguing to the contrary, Defendants rely in part on *Philbin v. Trans Union Corporation*.[17] In *Philbin* we explained that "Philbin is unable to identify the person who relayed this information to him . . . . Thus the hearsay statement by this unknown individual is not 'capable of being admissible at trial,' . . . and could not be considered on a motion for summary judgment."[18] Here, Plaintiffs identified the third-party declarants, and nothing suggests that those declarants would be unavailable to testify at trial. That is all

---

[14] *Stelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.").
[15] FED. R. CIV. P. 56(c)(2).
[16] FED. R. CIV. P. 56 advisory committee's note to 2010 amendment.
[17] 101 F.3d 957 (3d Cir. 1996).
[18] *Id.* at 961 n.1.

that was required to survive that aspect of Defendants' motion for summary judgment.[19]

We do not, of course, intend this ruling to control whether these out-of-court statements will actually be admitted at trial. That question need not be answered now. Accordingly, we will reverse the district court's exclusion of hearsay in determining if the record allowed Plaintiffs to survive a motion for summary judgment.

## B. New Jersey Anti-Quota Law

Plaintiffs assert that Camden's patrols policy violates New Jersey's anti-quota statute. That statute, entitled "Quotas for arrests or citations prohibited; use of numbers in law enforcement officer evaluations," provides in relevant part:

> a. A State, county or municipal police department or force . . . shall not establish any quota for *arrests or citations*. The department or force may, however, collect, analyze and apply information concerning the number of *arrests and citations* in order to ensure that a particular officer or group of officers does not violate any applicable legal obligation.
>
> b. The department or force shall not use the number of *arrests or*

---

[19] *See Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 102 (3d Cir. 1999) ("We will assume that Blackburn's testimony regarding what Zileski told him was effectively a proffer of the testimony that Zileski himself would give at trial, and we therefore treat this as evidence capable of being admitted at trial."); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) ("[T]here is no indication that Spagnola's salesforce would be unavailable to testify at trial. [Thus t]he averments of Spagnola's affidavit are capable of proof through admissible evidence.").

> *citations* issued by a law enforcement officer as the sole criterion for promotion, demotion, dismissal, or the earning of any benefit provided by the department or force. Any such *arrests or citations*, and their ultimate dispositions, may be considered in evaluating the overall performance of a law enforcement officer.[20]

Plaintiffs claim that this statute applies to the directed patrols policy even though the statute's text only addresses *arrests and citations*. Although the challenged patrols policy only requires civilian *encounters*, Plaintiffs claim that it is applied in a manner that also mandates citations. In arguing to the contrary, Camden claims that since the New Jersey law only applies to arrests and citations and the patrols policy has no such requirements, the policy is consistent with the New Jersey statute.

In granting summary judgment on this claim in favor of Camden, the district court correctly relied on the limited scope of the text of the statute—which does apply only to arrests and citations, and not to the civilian "encounters" that are at the center of this dispute. Accordingly, we will affirm the court's grant of summary judgment in favor of Camden on Plaintiffs' claims under the anti-quota law.

## C. Conscientious Employee Protection Act

CEPA protects employees against retaliation by employers for whistleblowing activities. It provides in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following: . . . Objects to, or refuses to

---

[20] N.J. Stat. Ann. § 40A:14-181.2 (West) (emphases added).

9

participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation.[21]

CEPA is remedial legislation and must therefore be construed liberally in employees' favor.[22]

New Jersey courts have created a four-pronged test for adjudicating CEPA claims that largely replicates the three-part burden-shifting test that is used to decide federal retaliation claims.[23] To establish a CEPA violation, a plaintiff must prove that: (1) she reasonably believed her employer was violating a law or rule; (2) she performed a protected whistleblowing activity; (3) an adverse employment action was taken against her; and (4) there is a causal connection between the whistleblowing activity and the adverse action.[24] The district court found Plaintiffs' CEPA claim failed because it was "deficient on at least two of the required elements," namely, the first and last prongs.[25] We disagree.

Plaintiffs correctly argue that the first prong only requires that they had a *reasonable belief* the policy was illegal.[26] They need not prove an actual illegality. The court found the plaintiff-officers faltered here because, although they may have subjectively believed the policy was illegal, "that belie[f] was not objectively reasonable."[27] The court specified that "[a]ny officer who reads the clear and plain

---

[21] N.J. Stat. Ann. § 34:19-3 (West).

[22] *See Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 91 (3d Cir. 1999) ("The New Jersey courts have repeatedly held that CEPA was enacted 'to protect employees from retaliatory actions by employers.'") (internal citation omitted).

[23] *See Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005).

[24] *Id.*

[25] *Fraternal Order of Police*, 2015 WL 1471800, at *4.

[26] *See Blackburn*, 179 F.3d at 94 n.4; *Dzwonar v. McDevitt*, 828 A.2d 893, 901 (N.J. 2003).

[27] *Fraternal Order of Police*, 2015 WL 1471800, at *4.

language of the statute would immediately understand that it only applies to 'arrests' and 'citations,' . . . the directed patrol policy does not encompass arrests or citations."[28]

However, CEPA is not intended "to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful."[29] Requiring a showing that the anti-quota law actually applies to the written policy imposes an obstacle that is as unfair as it is unreasonable. These plaintiffs should not have to satisfy a standard that is more appropriate for someone with a law degree. Moreover, under CEPA "a plaintiff [need not even] allege facts that, if true, actually would violate that statute, rule, or public policy."[30] Thus, Plaintiffs clearly satisfied the first prong of their *prima facie* case for a CEPA violation. Summary judgment on the CEPA claim was therefore not appropriate.

Camden attempts to reduce Plaintiffs' proof on the second prong of CEPA to frivolity by arguing that the plaintiff-officers' protests amount to nothing more than the whining of a "squeaky wheel" and by suggesting that CEPA is "a 'Whistleblower Act,' not a 'Chronic Complainer Act.'"[31] This is offensive. Irrespective of the underlying validity of the plaintiff-officers' claims, they certainly concern non-trivial matters. They allege workplace retaliation, as well as a law enforcement policy with possible constitutional implications for matters of increasingly urgent public interest.[32] We did not need the most recent

---

[28] *Id.*

[29] *See Blackburn*, 179 F.3d at 94 n.4 (internal citation omitted).

[30] *Dzwonar*, 828 A.2d at 901.

[31] *Blackburn v. United Parcel Serv., Inc.*, 3 F. Supp. 2d 504, 517 (D.N.J. 1998) *aff'd,* 179 F.3d 81 (3d Cir. 1999).

[32] In fact, Camden's own case law citations highlight the seriousness of the plaintiff-officers' allegations. For instance, Camden cites a case that explains that an employee could not reasonably believe extended lunch breaks or personal phone calls would fall under CEPA, and complaints about such

11

controversies arising from attacks on police or police shootings of unarmed civilians to appreciate that the relationship between police officers and residents in the high crime areas that they patrol is of the utmost importance.[33] It is indeed unfortunate that the City chooses to view police officers with these kinds of concerns as "chronic complainers" and "squeaky wheels."

Plaintiffs also satisfied their burden under the third prong. CEPA defines retaliation as including "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."[34] The record suggests that the plaintiff-officers' transfers from the elite unit to regular patrol came with a change in duties and a decrease in pay and status. Accordingly, at this stage, these transfers are "demotions." At the very least, they affect "the terms and conditions of employment" as required under CEPA. Thus, they qualify as adverse employment actions under CEPA's third prong.

We do, however, conclude that not all of the disputed actions would constitute retaliation under CEPA. The district court was correct in finding that placement on an "abuse of sick time" list, the cancellation of a vacation, and a visit by an Internal Affairs officer do not rise to the level of adverse employment actions absent more than is alleged here.[35]

matters are not a protected whistleblowing activity. *Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 552 (2000). The allegations here are far weightier, and thus fall more squarely within CEPA's purview.

[33] *See* Julie Turkewitz, *Baton Rouge Grapples with Anxiety and Grief Amid Vigils for Officers*, N.Y. TIMES (July 19, 2016), http://www.nytimes.com/2016/07/20/us/baton-rouge-louisiana-shooting.html; Kimberly Kindy et al., *A Year of Reckoning: Police Fatally Shoot Nearly 1,000*, WASH. POST (Dec. 26, 2015), http://www.washingtonpost.com/sf/investigative/wp/2015/12/26/2015/12/26/a-year-of-reckoning-police-fatally-shoot-nearly-1000/.

[34] N.J. Stat. Ann. § 34:19-2(e) (West).

[35] *Fraternal Order of Police*, 2015 WL 1471800, at *6.

CEPA does encompass a range of retaliatory actions. However, in order for actions to qualify under CEPA, they must have "impacted on the employee's 'compensation or rank' or be 'virtually equivalent to discharge.'"[36] These additional actions fall short of that threshold.

Likewise, Officer Williamson's allegations do not qualify as adverse action under CEPA. He contends that Camden retaliated against him in four ways: (1) reprimanding him for an incident in which he allegedly accosted a nurse; (2) charging him with a disciplinary action for not reporting that an attorney had a thumb drive with information about the Camden Police Department; (3) investigating him as a result of an argument during a union meeting; and (4) investigating him for "procedural violations." As the district court rightly noted, these actions did not affect Officer Williamson's compensation or rank nor were they equivalent to discharge.[37] Thus, only the plaintiff-officers' claim of retaliatory transfers satisfies the third prong of CEPA.

Finally, CEPA's fourth prong requires proof of a causal connection between the whistleblowing activity and the adverse employment action. The district court found that "[t]he missing fundamental element of plaintiffs' NJ CEPA claims is the causal connection between their 'whistle-blowing' and their adverse employment actions."[38] We disagree with several aspects of the district court's analysis of this issue.

First, the district court concluded that the real reason for the adverse actions was deficient performance, not the plaintiff-officers' objections.[39] We fail to see how that factual conclusion negates the existence of a genuine issue of material fact. Rather, whether the adverse actions resulted from deficient performance or objections to the disputed

---

[36] *Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005) (internal citation omitted).

[37] *Fraternal Order of Police*, 2015 WL 1471800, at *7.

[38] *Id.* at *4.

[39] *Id.* at *5-6.

policy is precisely the type of factual dispute that is inappropriate for summary judgment.

Second, the district court afforded insufficient weight to the temporal proximity of the plaintiff-officers' objections and the alleged retaliatory actions. Though we generally hold that closeness in time alone cannot establish causation,[40] we have found that close temporal proximity[41] or an added factor making the closeness unusually suggestive can suffice.[42] Here, Plaintiffs submitted evidence that the court should have viewed in the light most favorable to them.[43] That evidence disclosed that some of their objections were followed by adverse consequences within a matter of days. For instance, they asserted that "[d]espite Holland's improved statistics, he was placed on the low performer list . . . and transferred to regular patrol . . . . *only days* after he opposed his written counseling." Retaliatory motive is often revealed by such evidence.[44] At the very least, it certainly raises a question of fact for a jury.

---

[40] *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) ("[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'").

[41] *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) ("He demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon Avdel's receipt of notice of Jalil's EEOC claim.").

[42] *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) ("Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.").

[43] *See Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

[44] *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) ("Cases in which the required causal link has been at issue have often focused on the temporal proximity between the employee's protected activity and the adverse employment action, because this is an obvious method by which a plaintiff can proffer circumstantial

The district court expressly refused to consider the testimonial evidence the plaintiff-officers submitted tending to show a link between their objections and the alleged retaliation. The court believed that evidence could not be considered because it was hearsay.[45] We have already explained why that was error. For these reasons, we will reverse the district court's dismissal of the plaintiff-officers' retaliatory transfer claims under CEPA.

**D. First Amendment**

The plaintiff-officers claim that Defendants violated their First Amendment rights by retaliating against them for objecting to the patrols policy. A public employee's statement is protected by the First Amendment when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."[46]

The plaintiff-officers provide compelling arguments to support their claim that their speech involved a matter of public concern. They objected to the policy on police department counseling forms, writing, among other things, "QUOTA[]S ARE ILLEGAL!."[47] These writings were internal and arguably of a private nature, but that does not mean they do not pertain to a matter of public concern. Matters of public concern may overlap with personal

---

evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'") (internal citation omitted).

[45] *Fraternal Order of Police*, 2015 WL 1471800, at *5 n.9.

[46] *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)).

[47] App. 519a. *See Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994) ("Disclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern.").

grievances.[48]  Indeed, many employees may not be motivated to speak out on matters of public concern until they feel personally aggrieved by their employer.[49]  When all else at work is going well, it is the rarest of employees who is so altruistic that she will risk her livelihood to object to a matter of public concern.  The law does not, and should not, ignore legitimate claims of retaliation merely because the employee is less than pleased in the workplace.[50]

In addition, as the Supreme Court stressed in *Pickering*, "free and open debate is vital" to matters of legitimate public concern.[51]  The disputed policy here directly affects how police officers interact with the public, especially with residents of crime infested communities.  That is not only a matter of public interest, it has become a matter of the utmost importance.  Therefore, restriction of the plaintiff-officers' right to voice their opinions cannot be taken lightly—"freedom of speech is not traded for an officer's badge."[52]

The district court reasoned that, "even accepting that plaintiffs' opposition to the directed patrol policy was a

---

[48] *See Rankin v. McPherson*, 483 U.S. 378, 387 n.11 (1987) ("The private nature of the statement does not . . . vitiate the status of the statement as addressing a matter of public concern."); *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work.").

[49] *See Brennan v. Norton*, 350 F.3d 399, 413 (3d Cir. 2003) ("Common sense suggests that public employees, no less than other employees, will be more likely to speak out when they are disgruntled or personally dissatisfied with some aspect of their employment or employer.").

[50] *See id.* at 412 ("This does not, however, suggest that speech which is motivated by private concern can never qualify as protected speech. It clearly can if it addresses a matter that concerns the public as well as the speaker.").

[51] *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 571-72 (1968).

[52] *Biggs v. Vill. of Dupo*, 892 F.2d 1298, 1303 (7th Cir. 1990).

matter of public concern, plaintiffs cannot meet the other two elements of their First Amendment violation claims."[53] The court concluded that their First Amendment claims failed for lack of causation for the same reasons as their CEPA claims.[54] We have already explained why the court erred in dismissing the CEPA claims. Nevertheless, we agree with the district court that the plaintiff-officers' First Amendment claims cannot proceed.

The Supreme Court has explained that "when public employees make statements pursuant to their *official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[55] Here, the plaintiff-officers were not speaking as citizens when they wrote on the counseling forms. Citizens do not complete internal police counseling forms. Rather, completing counseling forms as part of the police disciplinary process falls under officers' official duties. Therefore, the plaintiff-officers' speech here "owe[d] its existence to [their] public employee[] professional responsibilities."[56]

Because the plaintiff-officers were not speaking as citizens, if their supervisors thought the writings were "inflammatory or misguided, they had the authority to take proper corrective action."[57] Though the First Amendment provides robust protection to statements pertaining to matters

---

[53] *Fraternal Order of Police*, 2015 WL 1471800, at *8.
[54] *Id.* ("For the same reasons explained above with regard to their NJ CEPA claims, plaintiffs have not provided sufficient evidence to go to a jury that their speech was a substantial or motivating factor in the alleged retaliatory actions, or that the Camden Police Department would not have taken the same action even if the speech had not occurred. Consequently, defendants are entitled to summary judgment on plaintiffs' First Amendment violation claims.").
[55] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (emphasis added).
[56] *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (citation omitted).
[57] *Garcetti*, 547 U.S. at 423.

of public concern, it does not empower public employees to "constitutionalize the employee grievance"[58] when they are acting in their official capacities.  Accordingly, we will affirm the court's dismissal of the plaintiff-officers' First Amendment claims.[59]

**E. Family and Medical Leave Act**

The FMLA affords eligible employees "a total of 12 workweeks of leave during any 12-month period"[60] in order to tend to "a serious health condition that makes the employee unable to perform the functions of the position."[61]  In addition, employees are entitled to FMLA leave to care for a family member with a serious health condition.[62]  It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA.[63]  A claim that these rights have been breached is referred to as "interference."[64]

Officer Holland alleges that he was approved for FMLA leave to care for his seriously ill mother in May 2009.

---

[58] *Connick v. Myers*, 461 U.S. 138, 154 (1983).

[59] We will also affirm the district court's dismissal of the plaintiff-officers' New Jersey Constitution First Amendment claim, which the court premised on identical grounds. *Fraternal Order of Police*, 2015 WL 1471800, at *8 n.12. Because the district court also based its dismissal of the plaintiff-officers' § 1983 claim on its rejection of their First Amendment claim, we will affirm the district court's § 1983 holding as well.  *Id.* at *8 n.13 ("Because plaintiffs cannot sustain their First Amendment claims, their claims against the City of Camden also fail.").

[60] 29 U.S.C. § 2612(a)(1).

[61] 29 U.S.C. § 2612(a)(1)(D).

[62] 29 U.S.C. § 2612(a)(1)(C).

[63] 29 U.S.C. § 2615(a)(1).

[64] Two types of claims can arise under the FMLA, retaliation (29 U.S.C. § 2615(a)(2)) and interference (29 U.S.C. § 2615(a)(1)).  *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012).  Officer Holland's claim sounds in interference.

However, on May 27 he was orally warned that he was using too much leave. Then, on June 17 he received a letter from a Lieutenant stating he was being placed in the "Chronic Sick Category." When he informed the Lieutenant of his approved FMLA leave, the Lieutenant said the Inspector did not care if it was approved and Officer Holland would continue to be placed in the category and would eventually be disciplined. Officer Holland also asserts that Camden staff visited him at home while he was on leave.

Officer Holland claims these actions interfere with protected FMLA leave.[65] He argues that a DOL regulation provides an expanded definition of FMLA interference as including not only denying leave, but also deterring an employee from using it. This regulation provides that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but *discouraging* an employee from using such leave."[66] Camden granted Officer Holland's request for FMLA leave to care for his mother. However, Officer Holland claims that, pursuant to this regulation, a reasonable trier of fact could find that Camden's placing him on a chronic sick list and threatening to discipline him chilled the assertion of his FMLA rights.

Camden contends that this "interference" was in part an internal miscommunication. According to Camden, Officer Holland was questioned about his use of leave because one branch of the department was unaware this leave had been approved under the FMLA. Camden further asserts that none of its actions were "sufficient to deter a person of ordinary firmness from exercising [their] right[s]."

Camden officials only visited Officer Holland once while he was on leave, and we agree that this was minimally intrusive. Without more, we agree that Camden's conduct is

---

[65] Officer Holland also advances an FMLA claim pursuant to New Jersey's FMLA, N.J. Stat. Ann. § 34:11B-9 (West). Analysis of Officer Holland's claim is the same under the federal and state FMLAs. Accordingly, our assessment under the federal FMLA covers both claims.

[66] 29 C.F.R. § 825.220(b) (emphasis added).

not actionable under the FMLA. Although we are sympathetic to Officer Holland's family situation, "there is no right in the FMLA to be 'left alone.'"[67] Camden's actions may have been insensitive, but they were not beyond the limitations the FMLA places on employers attempting to manage their workplaces.[68]

Officer Holland's claim is also doomed by an insufficient showing of injury. The FMLA "provides no relief unless the employee has been prejudiced by the violation."[69] The only case Officer Holland cites to the contrary is *Shtab v. Greate Bay Hotel*.[70] There, the district court found a jury could conclude that denial of immediate FMLA leave for an employee who had just returned to work constituted interference.[71] *Shtab* does not support Officer Holland's claim that reprimands such as those he alleges can, on their own, support relief under the FMLA. Rather, they must occur in tandem with actual harm.[72] Officer Holland does not allege he was actually denied FMLA leave. In fact, he concedes that he was able to take time off to care for his mother. Accordingly, the court was correct in granting summary judgment against Officer Holland.

**F. Qualified Immunity**

---

[67] *Callison v. City of Phila.*, 430 F.3d 117, 121 (3d Cir. 2005).

[68] *Id.* at 120.

[69] *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

[70] 173 F. Supp. 2d 255 (D.N.J. 2001).

[71] *Id.* at 258-59, 267-68.

[72] *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004) (finding that an employee would only be able to prove FMLA interference if he established that the employer's actions rendered "him unable to exercise that right in a meaningful way, thereby *causing injury*") (emphasis added).

In addition to suing the City of Camden, Plaintiffs also sued several officers in their individual capacities.[73] Those officers objected to the suits on the ground that they are protected by qualified immunity. The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[74] In assessing qualified immunity claims, we conduct a two-part inquiry. We must first determine whether the facts demonstrate the violation of a right. If they do, we must then decide if the right at issue was clearly established at the time of the alleged misconduct.[75] According to Defendants, Plaintiffs' claim fails the first part of the test because, as the rest of the case makes clear, no rights were violated.

The district court agreed that the doctrine of qualified immunity shields these individual officers from suit. It explained: "Because the Court finds that plaintiffs cannot support their claims that defendants violated their constitutional rights, the qualified immunity analysis ends there."[76]

We agree with the district court's conclusion that qualified immunity depends, in part, on whether a legal violation occurred. Since Plaintiffs have not shown a violation of federal law, we need not reach the issue of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, we will reverse the district court's order granting summary judgment to Defendants on Plaintiffs' CEPA claims. We will remand for proceedings consistent with this opinion. We will affirm the district

---

[73] Police Chief Scott Thomson, Inspector Orlando Cuevas, and Lieutenant Joseph Wysocki.

[74] *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

[75] *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[76] *Fraternal Order of Police*, 2015 WL 1471800, at *7 n.11.

court's dismissal of Plaintiffs' New Jersey anti-quota law, First Amendment claims, and Officer Holland's FMLA claim.