**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1141
_____

DANIEL CONWAY,
                              Appellant

v.

CONNECTONE BANK; ROBERT MURPHY
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-18-cv-14919)
U.S. District Judge: Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 5, 2022
_____

Before: CHAGARES, <u>Chief Judge</u>, SHWARTZ, <u>Circuit Judge</u>, and PRATTER, <u>District Judge</u>.[*]

(Filed: April 6, 2022)
_____

OPINION[**]
_____

---

[*] Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.
[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Daniel Conway sued ConnectOne Bank and one of its employees, Robert Murphy (together, "CNOB"), for violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., and the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. § 34:11B-1 et seq. The District Court granted summary judgment in CNOB's favor. Because the District Court was correct in doing so, we will affirm.

I

A

1

In early 2015, Conway began discussions with Murphy, CNOB's Managing Director and Senior Vice President for Commercial Lending, about joining CNOB. Murphy told Conway that CNOB was looking for someone like Conway to help grow CNOB's commercial and industrial lending operations. Conway told Murphy that he could bring in $15 million in loans and $10 million in deposits in his first year. Conway was offered a position as Senior Vice President for Commercial Lending and began working for CNOB in March 2016. During orientation, Conway received and reviewed CNOB's employee handbook that contained information about FMLA and NJFLA leave.

As Senior Vice President for Commercial Lending, Conway reported to Murphy and was tasked with bringing "in new business, help[ing] [Murphy] formulate structure in his team, and updat[ing] products and services." App. 99. Conway was also responsible for sourcing his own business. Given the nature of Conway's job, he sometimes traveled and frequently worked from home and kept Murphy informed of his whereabouts. In

2

November 2016, prompted, in part, by Conway's expense reports, Elizabeth Magennis, the Executive Vice President and Chief Lending Officer of CNOB, asked Murphy about Conway's productivity.

In January 2017, Murphy conducted Conway's first performance review. Murphy opined that Conway was a hard worker and generally met his job expectations, but his performance fell below Conway's own goals, with loan origination totaling $7.4 million and deposit growth totaling $250,000. Murphy noted areas for growth, emphasizing Conway's need for "results, results, results!!!!," increased exposure to senior management, and improvement as a team player. App. 150. Murphy set Conway's 2017 goals as $50 million in loan origination, $15 million in deposit growth, and $150,000 in fee income.

In early March 2017, Magennis emailed Murphy asking about "what loans and deposits [Conway] ha[d] sourced on his own, and what [he] ha[d] booked since he started." App. 196.

2

On a Saturday in mid-March 2017, Conway's wife fell and required surgery, which was scheduled for the following Thursday. Conway worked from home on Monday and came to the office on Tuesday and Wednesday. On Tuesday, Conway told Murphy and Magennis about his wife's status, updated them about new deals, and "explained . . . that [he] would be out for a significant amount of time, [and] that [he] would] be working from home." App. 115. While in the office on Wednesday, Conway told Murphy he might have to leave to take his wife to the hospital. Thereafter, Conway

3

told Murphy that he had to leave. Murphy said, "[g]o right ahead," and Conway "packed up [his] laptop, the files [he] needed, and went home." App. 115. Neither Murphy nor Magennis mentioned FMLA or NJFLA leave to Conway.

Conway's wife had surgery the next day, and Conway spoke to Murphy on the phone while his wife was in surgery. On Friday morning, Murphy emailed Conway to ask about one of the deals on which Conway was working. Conway responded that he was in the hospital and "plan[ned] to finish [his] write-up" later that evening or the following day. App. 116, 153. In response to Murphy asking how the surgery went, Conway responded that it was "worse than expected but it went well," and that his wife would "hopefully . . . start therapy today / tonight." App. 153.

Conway served as his wife's primary caretaker as she recovered, though family or friends occasionally helped for "short periods of time when [he] would go to a meeting or go to the office." App. 117. Although at times during his deposition Conway said he told Murphy he would be "out" and his wife needed "full-time care," App. 115-17, he also testified that he told CNOB that he would be "working from home." App. 115-16, 118-19, 326-27, 350-52, 458. Conway told Murphy that he was "falling behind . . . [b]ut . . . doing his best" during the period of his wife's recovery. App. 117.

Conway did not take any paid time off ("PTO") in the six weeks following the surgery when he was caring for his wife because "it didn't cross [his] mind that [he]

4

needed to [be]cause [he] was working." App. 118.[1] No one suggested that Conway take leave, and Conway testified that he would have been able to take FMLA leave even if it were unpaid, and that he "probably" or definitely would have taken FMLA leave if someone had suggested he do so. App. 117, 119.[2]

3

On Wednesday morning of the week of Conway's wife's surgery, and roughly two weeks after her prior email regarding Conway's productivity, Magennis again asked Murphy about Conway's productivity, reminding Murphy that she sought "an update on [Conway]'s 60 day written warning that [they] discussed in February." App. 198. Magennis sent a follow-up email in mid-April, where she noted that she had "asked [Murphy] on numerous occasions about [Conway's] progress and his written warning and/or dismissal," and requested a meeting to discuss what "[Conway] ha[d] accomplished (on his own) since" he was hired, and "when [she] can expect his replacement." App. 200. In the months that followed, Magennis expressed to Murphy

---

[1] Although Conway apparently worked both days, he originally requested PTO for the Thursday and Friday of the week of his wife's surgery at least a month before her injury to attend a three-day off-roading event.

[2] A member of CNOB's human resources department emailed Conway regarding an unrelated life insurance policy on the Monday following the surgery. She followed up again a few days later. Conway responded the same day, noting his wife's surgery, and that he had been "scatter brain[ed] [for] the last two weeks." App. 194. The emails made no mention of FMLA leave.

her concern about Conway's productivity as well as the need to warn him about his performance and the need to meet certain performance goals by August 2017.

In a June email to Murphy, Conway said he "realize[d] [he] ha[d] been off to a slow start," but that he was "confident [he] w[ould] deliver" on the goals he set forth in a business plan he sent to Murphy, including exceeding $50 million in new business for the year. App. 214. Conway explained that he did not mention his wife's health in the email because Murphy was already aware of it. A number of the proposals and prospective clients included in the business plan did not materialize.

### 4

In December 2017, Conway's wife underwent another surgery, which again rendered her temporarily immobile. Conway told Murphy about her condition and explained that he "would work from home." App. 120. The surgery was scheduled for around the Christmas holiday, when Conway had already planned to take off. Other than the planned holiday PTO, Conway took no PTO during the recovery period even though he had unused PTO remaining at the end of 2017.

### 5

In January 2018, CNOB issued Conway's second performance review.[3] The review noted that Conway generally met expectations, that he generated many, if not all, of his fees from a single client who left the bank at year end, and that he had secured a

---

[3] Conway asserts that he received neither performance review and the record shows that neither bore his signature. Even assuming Conway was unaware of the contents, the evaluations reflect the employer's perception of his work.

"marquee name" in the market. App. 225. It also observed that his accomplishments "fell below expectations," and stated that he needed to secure "results," "be more of a team player," "increase exposure with [s]enior management," and "[d]evelop better relationship[s] with credit partners." App. 225. Although Conway felt his performance merited a bonus, he was not given one for 2017.

Conway was terminated in May 2018. Murphy explained that although Conway was a hard worker who was cordial, friendly, and listened to guidance, he felt Conway's business plan did not "com[e] to fruition," App. 92, and that both he and Magennis "felt that [Conway's] performance wasn't there," App. 92.

B

Conway sued CNOB for violations of the FMLA and NJFLA. After discovery closed, the parties cross-moved for summary judgment.

The District Court granted CNOB's motion for summary judgment and denied Conway's. Conway v. ConnectOne BankCorp, Inc., No. CV 18-14919 (SRC), 2020 WL 7706907, at *25 (D.N.J. Dec. 29, 2020). Relevant here, the District Court concluded that (1) Conway's "denial of benefits" interference claims failed because he did not provide adequate notice to CNOB that he intended to take time off due to his wife's surgeries, id. at *2-10; (2) Conway's "failure to advise" interference claims failed because he was not prejudiced by CNOB's purported failure to give him the required FMLA notices, id. at *17-18; and (3) Conway's retaliation claims failed because he never engaged in a

7

protected activity, id. at *18, and even if he had, Conway did not rebut CNOB's

legitimate non-discriminatory reason for his termination, id. at *18-25.

Conway appeals.

II[4]

Our Court has recognized that "[t]wo types of claims can arise under the FMLA,"

interference claims under 29 U.S.C. § 2615(a)(1) and retaliation claims under 29 U.S.C.

§ 2615(a)(2). Fraternal Ord. of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 245

n.64 (3d Cir. 2016). We address Conway's interference and retaliation claims in turn.[5]

A

Interference claims can involve two theories: denial of benefits claims and failure

to advise claims. To recover on a denial of benefits claim, a plaintiff must show, among

other things, that he "gave notice to the defendant of his . . . intention to take FMLA

leave." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017) (quoting Ross

v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014)). To recover on a failure to advise claim,

a plaintiff must show, among other things, that the "employer[] fail[ed] to properly notify

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's order granting summary judgment is plenary, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we view the facts and make all reasonable inferences in the non-movant's favor, Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[5] FMLA and NJFLA claims are subject to the same analysis. Fraternal Ord. of Police, Lodge 1, 842 F.3d at 245 n.65.

8

an employee of [his] FMLA rights." Lupyan v. Corinthian Colls. Inc., 761 F.3d 314, 318-19 (3d Cir. 2014); see also 29 C.F.R. § 825.300(e).

1

Conway asserts that he told CNOB that his wife had surgery and he needed to work from home to care for her. He argues that an employee provides sufficient notice under the FMLA regardless of whether the employee actually seeks leave or indicates an intention to take it so long as he conveys a circumstance to his employer that may qualify for FMLA leave.

Conway misconstrues the notice requirement. To give proper notice, an employee must request or relay an intention to take leave. See, e.g., 29 U.S.C. § 2611(i) (defining an "eligible employee" as an employee who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested under section 2612); 29 U.S.C. § 2612(e)(2) (requiring an employee to provide his employer notice of his "intention to take leave . . . ."); Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303 (3d Cir. 2012) ("To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave."). The implementing regulations require that an employee, depending on the circumstances surrounding the leave, "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave," and "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to [a] leave request." 29 C.F.R. §§ 825.302(c), 825.303(b).

9

Although the leave request need not follow any set formula, leave must be requested or the need for time off must be conveyed in some form. For example, an employee provided sufficient notice where he disclosed he had been hospitalized, had been out of work for roughly six weeks, informed his employer that the health issues were ongoing, and that he "might need to take an additional six weeks off for further . . . surgery." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 400, 403 (3d Cir 2007). We have similarly concluded that questions of fact remained as to the sufficiency of the employee's FMLA notice where, among other things, the employee conveyed that "(1) she was 'currently in the emergency room,' (2) her 'mother had been brought into the hospital via ambulance,' and (3) she 'would be unable to work that day.'" Lichtenstein, 691 F.3d at 304 (emphasis omitted). Thus, an employee has considerable leeway in how he requests leave, but the employee must actually convey he needs time off or is unable to work.[6] An employee who says that he intends to work while out of the office has not conveyed to his employer that he is unable to work or that he seeks time off.

Although Conway cites to instances where he told Murphy, Magennis, or both that he would be "out" or "off" and caring for his wife, Conway never asked for leave or conveyed he was unable to work. In fact, Conway's deposition testimony read in context leaves no doubt that "out" and "off" meant taking care of his wife while working from

---

[6] Although the FMLA imposes a duty on an employer to inquire of an employee into "whether leave is potentially FMLA-qualifying," 29 C.F.R. §§ 825.301(a), 825.302(c), 825.303(b), this duty is triggered only when an employee either requests leave, says he is unable to work, or conveys a certain or contingent intention to take it.

10

home. Indeed, Conway admits that he did not think to take PTO he earned because he was working.

Thus, notwithstanding Conway's selective quotes from his deposition testimony, the record is clear that Conway never asked for leave or otherwise indicated an intention to take it. Accordingly, no reasonable jury could conclude that Conway conveyed an intention to take leave, and the District Court properly granted CNOB summary judgment on Conway's denial of benefits claims.

2

The FMLA requires employers to notify their employees of their FMLA rights, including providing a "general notice," an "eligibility notice," a "rights and responsibilities notice," and a "designation notice." 29 C.F.R. § 825.300(a)-(d); see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004); Lupyan, 761 F.3d at 318. Conway contends that CNOB failed to provide him with the latter three individualized notices.

An employer's obligation to provide these individualized notices arises only after an employee requests or takes leave. Under 29 C.F.R. § 825.300(b)(1), the "eligibility notice" requirement, an employer must "notify [an] employee of [the] employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances," from the date the "employee requests FMLA leave, or when the employer acquires knowledge that [the] employee's leave may be for an FMLA-qualifying reason." The "rights and responsibilities notice" requirement is triggered at the same time as the "eligibility notice" requirement. 29 C.F.R. § 825.300(c)(1) ("This

11

notice shall be provided to the employee each time the eligibility notice is provided . . . ."). Similarly, the "designation notice" must be given when "the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason." 29 C.F.R. § 825.300(d)(1); see also id. § 825.300(d)(2).

Here, CNOB's individualized notice obligations were never triggered[7] because, as discussed above, Conway never requested or conveyed an intention to take leave, and Conway does not claim that he took leave that triggered CNOB's obligations.[8]

Conway also failed to show that he was prejudiced by the purported failure to provide him notice. To show prejudice, Conway must "establish that th[e] failure to advise rendered him unable to exercise [his FMLA] right [to leave] in a meaningful way, thereby causing injury." Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149, 157 (3d Cir. 2015) (quoting Conoshenti, 364 F.3d at 143). Conway seems to assert that he was unable meaningfully to exercise his right to FMLA leave because "he had no idea that he had the option of requesting or taking job-protected leave under the FMLA." Appellant's Br. at 28. Conway, however, does not dispute that he received and reviewed CNOB's handbook, which contained information about FMLA leave, or contend that the

---

[7] Contrary to the District Court, we view CNOB as having sought summary judgment on Conway's failure to advise claims based on notice, causation, and prejudice. D. Ct. ECF No. 30-2 at 18. In any event, both Conway and CNOB have addressed the notice issue on appeal, and "[w]e may affirm on any basis supported by the record." TD Bank N.A. v. Hill, 928 F.3d 259, 270 (3d Cir. 2019).

[8] Conway did take pre-scheduled PTO that ended up coinciding with his wife's surgeries. Conway, however, does not mention PTO in his briefs on appeal, and so any PTO-related argument is waived. Cf. John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . , but not squarely argued, are considered waived.").

information in the handbook was somehow insufficient. Additionally, Conway has not pointed to evidence showing a link between the notices he was not provided and any purported injury.

Accordingly, the District Court correctly granted CNOB summary judgment on Conway's failure to advise claim.

B

Conway's FMLA retaliation claim also fails. An "FMLA retaliation claim is assessed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Capps, 847 F.3d at 151. Under this framework, Conway must first put forth a prima facie case of retaliation, which requires that he show he (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) the adverse action was casually related to the protected activity. Lichtenstein, 691 F.3d at 302. "If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. [If the defendant does so,] the burden then shifts back to the plaintiff to" show "that the articulated reason was a mere pretext for discrimination." Capps, 847 F.3d at 151 (quoting Ross, 755 F.3d at 193).

We agree with the District Court that summary judgment is warranted. For the reasons discussed above, Conway never engaged in a protected activity. Because

13

Conway cannot make out this first element of his prima facie case, his retaliation claim fails.[9]

III

For the foregoing reasons, we will affirm.

---

[9] Even if we reached the issue of whether CNOB had a legitimate, nondiscriminatory reason to terminate Conway and whether the reason was pretextual, we would conclude CNOB is entitled to summary judgment. There are no material disputed facts regarding CNOB's proffered non-discriminatory reason for Conway's termination. CNOB's concerns about Conway's performance predated his wife's first surgery and continued thereafter. By Conway's own admission, he was "off to a slow start," App. 214, and the record shows that he failed to meet his stated performance goals throughout his employment.

The purported "weaknesses, implausibilities, and inconsistencies" Conway has identified do not undermine the legitimacy of CNOB's reason for terminating Conway. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). For example, Murphy's failure to recall speaking with Magennis about Conway's performance prior to March 2017 does not undermine Magennis's contemporaneous emails to him detailing her concerns about Conway's performance. In addition, the fact that a warning letter and termination were not contemplated until after his wife's first surgery is consistent with Magennis's increasing concern with Conway's production over time and Murphy's failure to respond to her inquires. Conway challenges CNOB's assertion that he underperformed throughout his tenure by asserting that criticism purportedly stopped after June 2017 when he returned to the office. This assertion is belied by the record. His January 2018 performance evaluation included continuing criticisms about his productivity. Finally, even assuming that Conway is correct that he was not fired because of a reorganization, no reasonable juror could conclude that Conway was fired because he requested FMLA leave. In sum, Conway has failed to adduce sufficient evidence to discredit CNOB's proffered reason, and summary judgment was properly granted on this basis as well.

14