**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2471
_____

JOHN F. GUERRA, JR.,
                                        Appellant

v.

CONSOLIDATED RAIL CORPORATION (CONRAIL)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-17-cv-06497)
District Judge: Hon. Claire C. Cecchi
_____

Argued June 13, 2019

Before: HARDIMAN, PORTER, COWEN, *Circuit Judges*

(Filed: August 21, 2019)
_____

Robert E. Myers
Lawrence A. Katz    [ARGUED]
COFFEY KAYE MYERS & OLLEY
Two Bala Plaza, Suite 718
Bala Cynwood, PA 19004

*Counsel for Appellant*

Robert S. Hawkins
Joseph P. Sirbak, II  [ARGUED]
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

The Federal Railway Safety Act ("FRSA") provides that railroad carriers may not retaliate against employees who blow the whistle on certain safety violations. If a carrier breaks this rule, the aggrieved employee may seek relief by filing a complaint with the Occupational Safety and Health Administration ("OSHA") "not later than 180 days" after the alleged retaliation occurred. *See* 49 U.S.C. § 20109(d)(2)(A)(ii). The Secretary of Labor then has 210 days to issue a "final decision" on the matter. If the Secretary takes too long, "the employee may bring an original action … for de novo review in the appropriate district court of the United States." *Id.* § 20109(d)(3).

This case asks whether FRSA's 180-day limitations period is "jurisdictional." That is, if an employee fails to file a timely complaint with OSHA, does that divest a district court of subject matter jurisdiction? Or is the limitations period simply a claim-processing rule, the breach of which may defeat

2

an employee's claim, but not a district court's jurisdiction to hear the case?

After considering the text, context, and history of the provision, and mindful of the Supreme Court's decisions in this area, we hold that FRSA's 180-day limitations period in 49 U.S.C. § 20109(d)(2)(A)(ii) is a nonjurisdictional claim-processing rule. The District Court assumed otherwise, but we will affirm the District Court's decision on other grounds.

I

A

Congress enacted FRSA in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Ten years later, Congress added an anti-retaliation provision to the statute, protecting "employees who alerted authorities about a violation of federal safety regulations." *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 509 (6th Cir. 2015) (citing Pub. L. No. 96-423, § 10, 94 Stat. 1811 (1980)). Under the amended law, employees who thought themselves the victims of retaliation could seek relief through mandatory arbitration under the Railway Labor Act before the National Railroad Adjustment Board. *Id.* at 510. Except in narrow circumstances, the decision of the Adjustment Board was final and mostly unreviewable by courts. *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) ("Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." (citation omitted)).

In 2007, Congress amended FRSA again, untangling its retaliation-dispute-resolution scheme from the Railway Labor Act and giving it to the Secretary of Labor, subject to expanded judicial oversight. *See* Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1521, 121 Stat. 266 (2007). The point of this was to "expand the protections for railroad employees" and to "enhance employees' administrative and civil remedies." *Perez*, 778 F.3d at 510 (internal quotation marks and citation omitted).

Today, FRSA and its accompanying regulations provide for a straightforward, multi-step adjudication process for retaliation complaints.

First, if an employee thinks she has been wronged in violation of the Act, she must file a complaint with OSHA "not later than 180 days after the date on which the alleged violation … occurs." 49 U.S.C. § 20109(d)(2)(A)(ii), (d)(1); 29 C.F.R. §§ 1982.103–104.[1] OSHA will then investigate the claims and issue written findings and a preliminary order "as to whether or not there is reasonable cause to believe that the respondent has retaliated against the complainant in violation of … FRSA." 29 C.F.R. §§ 1982.105(a), 1982.104.

Second, any unsatisfied party may object to OSHA's findings or preliminary order within 30 days and request a hearing before an administrative law judge ("ALJ"). *Id.* § 1982.106.[2] The ALJ may conduct a hearing on the record and must issue a decision containing "appropriate findings, conclusions, and an order pertaining to … remedies." *Id.* § 1982.109(a); *see id.* § 1982.107(b).

Third, within 14 days of the ALJ's decision, any party may petition for review from the Administrative Review Board ("ARB"). *Id.* § 1982.110(a). If the ARB accepts the case, it has

---

[1] 49 U.S.C. § 20109(d)(1) provides:

> An employee who alleges discharge, discipline, or other discrimination in violation of subsection (a), (b), or (c) of this section, may seek relief in accordance with the provisions of this section, with any petition or other request for relief under this section to be initiated by filing a complaint with the Secretary of Labor.

[2] If no party objects, then OSHA's preliminary findings become the "final decision of the Secretary." 29 C.F.R. § 1982.106(b).

120 days to issue a final decision for the Secretary. *Id.* § 1982.110(c). If the ARB rejects a case, the ALJ's decision becomes the Secretary's final order. *Id.* § 1982.110(b).

Finally, any person "adversely affected or aggrieved" by the Secretary's final decision as issued by the ARB[3] may, within 60 days, "obtain review of the order in the United States court of appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation." 49 U.S.C. § 20109(d)(4).

This process is what happens if the agency is expeditious. But if the agency takes too long to issue a final decision, FRSA provides a so-called "kick-out" option for claimants to seek "de novo review" in federal district court.

> **De novo review.**—With respect to a complaint under paragraph (1), if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

---

[3] If nobody objects to OSHA's preliminary order, making that decision the "final decision of the Secretary," the parties may not later seek judicial review. *See* 29 C.F.R. § 1982.106(b). The same goes for an unappealed order of an ALJ. *Id.* § 1982.110(b).

*Id.* § 20109(d)(3). This kick-out provision and the 180-day limitations period are the focus of this case.

B

John Guerra, Jr. worked as a conductor and brakeman for Consolidated Rail Corporation ("Conrail"). He alleges that, in late 2015, Conrail urged him to cut corners and ignore safety regulations to increase productivity. When he refused, Conrail threatened him and eliminated certain incidental perks of his job. Guerra reported this alleged retaliation to Conrail's compliance office, which told him that his complaints would be "handled in a confidential manner." App. 29. But Conrail did nothing to alleviate his concerns. Instead, he says, he was told that he needed to "play ball" with the company and that, if he kept reporting safety issues, there would be "undesirable consequences." App. 29–30. Likewise, in early 2016, Guerra filed six complaints about allegedly defective braking systems in two Conrail locomotives. Yet again, he says, the only response was that he needed to toe the company line for his own good.

Shortly after that, a train Guerra was operating failed to brake properly and ran through a railroad switch. Conrail investigated the incident and, on April 6, 2016, notified Guerra that he would be suspended for 45 days. As Guerra tells it, a supervisor informed him this should "be a lesson to him" and that Guerra should "be more cooperative." App. 31.

On May 10, 2016, Guerra's attorney, Lawrence Katz, allegedly "filed a FRSA complaint with the Secretary of Labor's Region II [OSHA] Whistleblower Office." *Guerra v. Consol. Rail Corp.*, No. 17-cv-6497, 2018 WL 2947857, at *2 (D.N.J. June 13, 2018). Six months passed by. Seeing no response from OSHA, on November 28, 2016, Katz followed up with OSHA by email and attached a copy of the complaint.

OSHA notified Guerra in early 2017 that his claim was dismissed as untimely because his complaint had been filed more than 180 days after the alleged violation. According to the agency's letter, Conrail's alleged retaliation against Guerra happened on April 6, 2016, but OSHA first received Guerra's

6

complaint on November 28, 2016—237 days later. As for Guerra's supposed May 10 complaint:

> There is no evidence that such a complaint was filed with the Regional Office. Furthermore, previous complaints filed by Complainant's attorney in other matters were faxed or sent by tracked delivery. There is nothing to indicate this complaint was ever filed with OSHA or circumstances to allow tolling.

App. 57.

Guerra objected to OSHA's dismissal and requested a hearing before an ALJ. He submitted affidavits from his attorneys that detailed their normal procedures for preparing and mailing complaints to OSHA. These affidavits, Guerra argued, provided enough evidence to invoke the common-law mailbox rule's presumption of delivery. But the ALJ thought otherwise, finding that Guerra's "self-serving affidavits" nowhere revealed "who drafted the complaint, who dictated the complaint, and most importantly, who mailed the complaint." App. 117. So the ALJ held that the mailbox rule did not apply and dismissed Guerra's claim for untimeliness.

Guerra initially appealed the ALJ's decision to the ARB, but then opted to kick out his claim to federal court because more than 210 days had elapsed since OSHA had received his complaint. *See In re: Guerra v. Consolidated Rail Corp., (Conrail)*, ARB No. 2017-069, 2018 WL 6978223 (DOL Admin. Rev. Bd. June 29, 2018).[4] Conrail moved to

---

[4] The ARB accepted the case and issued a briefing schedule, but Guerra failed to file his opening brief as ordered. *In re: Guerra*, 2018 WL 6978223, at *1. Guerra also apparently failed to notify the ARB that he had filed a complaint in federal court. *Id.* at *1 n.4; 29 C.F.R. § 1982.114(c). In any event, after the District Court issued its decision, the ARB dismissed Guerra's case for lack of

7

dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), asserting that Guerra's failure to file a timely complaint with OSHA deprived the District Court of jurisdiction over the case. Conrail also moved in the alternative under Rule 56 for summary judgment on the grounds that the record refuted Guerra's only theory of timeliness. In response, Guerra agreed that the District Court would lack jurisdiction if his complaint had been untimely filed, but asserted that, under the mailbox rule, his attorneys had timely mailed his complaint to OSHA on May 10.

The District Court accepted without scrutiny the parties' agreement that the Court would lack jurisdiction if Guerra had untimely filed his complaint with OSHA. And finding that Guerra's evidence was not enough to invoke the presumption of the common-law mailbox rule, the Court dismissed his complaint for lack of jurisdiction. Guerra timely appealed.

II

The District Court had putative jurisdiction under 28 U.S.C. § 1331 and 49 U.S.C. § 20109(d)(3). We have putative jurisdiction under 28 U.S.C. § 1291. And we "always [have] jurisdiction to determine [our] own jurisdiction." *White-Squire v. United States Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citation omitted).

At the outset, the District Court erred by accepting without scrutiny the parties' accord on its supposed lack of jurisdiction. The Court had "an independent obligation to determine whether subject-matter jurisdiction exist[ed], even in the absence of a challenge from any party." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). So even though both sides agreed that jurisdiction would not exist over an untimely complaint, the District Court was still obliged to make sure the parties were right. *Id.* And because, as we explain below, the parties were wrong, the Court, by accepting their agreement, also failed its "strict duty to exercise the jurisdiction that [was] conferred upon [it] by Congress."

---

jurisdiction "on the ground that Guerra ha[d] removed it to district court." *In re: Guerra*, 2018 WL 6978223, at *1.

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("[F]ederal courts 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.'" (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821))).

Thus, on appeal, "regardless of the acquiescence or wishes of the parties, we must question whether the District Court properly treated [FRSA's statute of limitations] as a jurisdictional issue under Rule 12(b)(1)." *Hartig*, 836 F.3d at 267. We exercise de novo review over that legal conclusion. *Id.* at 267 n.8.

## III

This case presents two questions. First, does an untimely administrative complaint under FRSA's 180-day statute of limitations deprive a district court of subject matter jurisdiction? Second, did Guerra timely file his complaint with OSHA?

## A

The first question presented "concerns the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh*, 546 U.S. at 503. To keep these concepts distinct, the Supreme Court has classified statutory requirements (for example, FRSA's 180-day limitations rule) as either "jurisdictional conditions" or "claim-processing rules." *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010). The distinction between these types "can be confusing in practice," so we must conduct a "close analysis" of the provision at issue. *Id.*

"Jurisdiction," properly defined, refers to a court's "adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). This authority—the "judicial Power"—flows from Article III of the Constitution, U.S. Const. art. III, § 1, but Congress, under Article I, has nearly "plenary" power to shape its scope by statute. *See Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) (plurality op.); *Bowles v. Russell*, 551 U.S. 205, 212

(2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."). A statute is thus "jurisdictional" if it "delineat[es] the classes of cases (subject-matter jurisdiction) [or] the persons (personal jurisdiction) implicating that authority." *Muchnick*, 559 U.S. at 160–61 (internal quotation marks and citation omitted).

Claim-processing rules, by contrast, "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Rules of this sort, even if important and mandatory, "do[] not reduce the adjudicatory domain of a tribunal." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009); *see United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015).

The difference between these categories is not mere semantics. Among other things, although our adversarial legal system generally adheres to the principle of party presentation,[5] as noted above, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction[.]" *Henderson*, 562 U.S. at 434. So if a statutory condition is jurisdictional, a court must "raise and decide" whether that condition has been satisfied, even if the parties overlooked or elected not to press the issue. *Id.*; *Arbaugh*, 546 U.S. at 514; *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019). Likewise, jurisdictional defects cannot be forfeited or waived by the parties and are not subject to equitable tolling, while the opposite is true of claim-processing defects. *See Arbaugh*, 546 U.S. at 514; *Union Pac.*, 558 U.S. at 81–82; *see also United States v. Kalb*, 891 F.3d 455, 459–60 (3d Cir. 2018). As a result, "[j]urisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants." *Henderson*, 562 U.S. at 434; *see Arbaugh*, 546 U.S. at 508–09 (explaining that the defendant first raised a supposed jurisdictional defect two weeks after trial).

---

[5] "That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

Because of these "harsh consequences" that flow from labeling a statute "jurisdictional," we apply a bright-line test, looking for whether Congress has "clearly state[d]" that this treatment is appropriate. *See Davis*, 139 S. Ct. at 1849–50 (citations omitted); *Arbaugh*, 546 U.S. at 515–16. This is not a matter of magic words. Yet absent a clear indication that Congress intended to imbue a condition with jurisdictional significance, we will "treat the restriction as nonjurisdictional in character." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–54 (2013) (internal quotation marks and citations omitted); *Davis*, 139 S. Ct. at 1850. We look for a clear statement in the statute's "text, context, and relevant historical treatment." *Kalb*, 891 F.3d at 460 (quoting *Muchnick*, 559 U.S. at 166).

Finally, we consider these principles against the backdrop that Congress has granted federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. FRSA "surely is a law of the United States." *Arbaugh*, 546 U.S. at 505 (internal quotation marks and citation omitted). So "[t]he question, then, is not whether [FRSA's 180-day statute of limitations] confers jurisdiction, but whether [it] removes the jurisdiction given to the federal courts." *Whitman v. Dep't of Transp.*, 547 U.S. 512, 514 (2006).

1

The plain text of FRSA's 180-day statute of limitations nowhere shows that it bears jurisdictional weight. *See* 49 U.S.C. § 20109(d)(2)(A)(ii). On the contrary, it "speaks only to a claim's timeliness, not to a court's power." *Kwai Fun Wong*, 135 S. Ct. at 1632. Put differently, "it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982).

To be sure, Congress used mandatory language—"[a]n action … *shall be commenced* not later than 180 days…." § 20109(d)(2)(A)(ii) (emphasis added). But emphatic words are not enough to make a statute jurisdictional. *See Kwai Fun Wong*, 135 S. Ct. at 1632 (explaining that a filing deadline is rarely jurisdictional, "even when the time limit is important

11

(most are) and even when it is framed in mandatory terms (again, most are)"); *Henderson*, 562 U.S. at 439 ("[W]e have rejected the notion that 'all mandatory prescriptions, however emphatic, are ... properly typed jurisdictional.'" (quoting *Union Pac.*, 558 U.S. at 81)). In short, the question is whether Congress intended to limit courts' "adjudicatory authority," not whether Congress intended to bar untimely claims. *See Davis*, 139 S. Ct. at 1851 ("[A] prescription does not become jurisdictional whenever it promotes important congressional objectives." (internal quotation marks and citation omitted)).

2

Nor does the provision's context speak in jurisdictional terms. Indeed, subsection (d)(2) is titled simply "Procedure," which "suggests Congress regarded the [180]-day limit as a claim-processing rule." *Henderson*, 562 U.S. at 439; 49 U.S.C. § 20109(d)(2). And none of the procedures listed in subsection (d)(2) have even a slight jurisdictional tinge.

Conrail argues otherwise, relying on a series of linking inferences between three other subsections. First, subsection (d)(1) requires that "any petition or other request for relief … be initiated by filing a complaint with the Secretary of Labor." § 20109(d)(1). Next, subsection (d)(2)(A)(ii)—the "statute of limitations"—applies to "[a]n action under paragraph (1)" (referring to subsection (d)(1)). *Id.* § 20109(d)(2)(A)(ii). And last, subsection (d)(3)—the kick-out provision (Conrail's supposed jurisdictional hook)—states that it applies "[w]ith respect to a complaint under paragraph (1)." *Id.* § 20109(d)(3). Construed together, Conrail says, these provisions mean that, "[i]f a complainant does not file a valid [i.e., timely] complaint under paragraph 1 … then there is simply no predicate 'complaint under paragraph (1)' over which § 20109(d)(3) could confer jurisdiction to the district court." Appellee's Supp. Letter Br. 4 ("Construing this language as a whole demonstrates Congress'[s] intent to confer jurisdiction, through § 20109(d)(3), only over complaints satisfying the mandatory limitations period of § 20109(d)(2)(A)(ii).").

But this interpretation reads a non-existent modifier into § 20109(d)(3). Nothing in that subsection's text states that it applies only to "valid" or "timely" complaints. Nor does the

12

limitations rule's textual proximity to the kick-out provision show jurisdictional purpose. *See Auburn*, 568 U.S. at 155 ("A requirement we would otherwise classify as nonjurisdictional … does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions."); *Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012) ("Mere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle."). And more: Conrail's argument disregards the "structural divide built into the statute" between the various subsections. *Kwai Fun Wong*, 135 S. Ct. at 1633 ("Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional.").

3

Nor do the provision's history or purpose display any clear congressional intent to create a jurisdictional bar. And without such a clear statement, we refuse to divine the legislative history. *See Kwai Fun Wong*, 135 S. Ct. at 1633 ("[E]ven assuming legislative history alone could provide a clear statement (which we doubt), none does so here.").

This lack of jurisdictional pedigree distinguishes this case from *Bowles v. Russell*, 551 U.S. 205 (2007). There, because of its "longstanding treatment" of Article III appellate deadlines as jurisdictional, the Supreme Court held that a party's failure to timely appeal a district court judgment divested jurisdiction from the court of appeals. *Bowles*, 551 U.S. at 210–11; *Union Pac.*, 558 U.S. at 82 (explaining that *Bowles* "rel[ied] on a long line of this Court's decisions left undisturbed by Congress"). No such "longstanding treatment" exists here.

Instead, FRSA's statute of limitations is simply another example of the Supreme Court's admonition that "most time bars are nonjurisdictional." *Kwai Fun Wong*, 135 S. Ct. at 1632; *see Auburn*, 568 U.S. at 154 ("[W]e have repeatedly held that filing deadlines ordinarily are not jurisdictional." (citations omitted)); *Henderson*, 562 U.S. at 435 ("Filing deadlines, such as the 120–day filing deadline at issue here, are quintessential claim-processing rules."); *Scarborough v. Principi*, 541 U.S. 401, 413–14 (2004); *Kontrick*, 540 U.S. at 455–56; *see also T*

*Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 324 (3d Cir. 2019) ("Caution is indeed warranted because statutes of limitations and other filing deadlines ordinarily are not jurisdictional." (internal quotation marks and citation omitted)). Overall, these cases emphasize that "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional[.]" *Kwai Fun Wong*, 135 S. Ct. at 1632.

So too here. Congress has not clearly stated that FRSA's statute of limitations is jurisdictional. Not only are we the first federal appellate court to address this specific question, but agency filing deadlines are typically nonjurisdictional. So the provision has no longstanding jurisdictional pedigree. *See Bowles*, 551 U.S. at 210–11. We thus decline to read a jurisdictional bar into the statute.

4

Conrail makes two arguments in rebuttal. Neither is persuasive.

First, Conrail says that, "because the administrative process under FRSA is designed to fully adjudicate an employee's claim, … district court jurisdiction is narrowly drawn and the filing of an administrative complaint under FRSA carries jurisdictional significance." Appellee's Supp. Letter Br. 3. Conrail thus compares FRSA to "statutory schemes that channel certain claims to administrative agency adjudication first, followed by judicial review in a federal court." *Davis*, 139 S. Ct. at 1851 (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)).

But this argument falters from the start because it is nowhere "fairly discernible in the statutory scheme" that Congress intended "to preclude district court jurisdiction." *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 195 (3d Cir. 2018) (citing *Thunder Basin*, 510 U.S. at 207). On the contrary, at issue is FRSA's kick-out provision, which effectively allows an employee to start her case over from scratch in a federal district court, bringing "an *original* action

14

at law or equity for *de novo* review." 49 U.S.C. § 20109(d)(3) (emphasis added).

Second, Conrail analogizes FRSA to the Sarbanes-Oxley Act of 2002 ("SOX"), Pub. L. No. 107-204, 116 Stat. 745 (2002). SOX's anti-retaliation provision is very similar to FRSA's. *Compare* 18 U.S.C. § 1514A(b), *with* 49 U.S.C. § 20109(d). Conrail points to a few district court decisions dismissing SOX claims "for lack of subject matter jurisdiction where the complainant failed to file a timely administrative complaint." Appellee's Supp. Letter Br. 5 (citing *Delmore v. McGraw-Hill Cos., Inc.*, No. 12-CV-1306-JPS, 2013 WL 3717741, at *2 (E.D. Wis. July 12, 2013); *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 599 (N.D. Ind. 2012); *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010); *Murray v. TXU Corp.*, 279 F. Supp. 2d 799, 802 (N.D. Tex. 2003)).

But these cases are all merely "drive-by jurisdictional rulings" that easily "miss the critical differences between true jurisdictional conditions and nonjurisdictional limitations on causes of action." *Muchnick*, 559 U.S. at 161 (internal quotation marks and citations omitted); *see, e.g.*, *King v. Ind. Harbor Belt R.R.*, No. 2:15-CV-245-JD-PRC, 2017 WL 9565363, at *7–9 (N.D. Ind. Feb. 1, 2017) (analyzing and critiquing the haphazard "jurisdictional" language used by many district courts in the SOX context). In other words, these decisions are "less than meticulous" with how they "use[] the label 'jurisdictional.'" *Kontrick*, 540 U.S. at 454–55. They simply assume that SOX's time limit implicates courts' subject matter jurisdiction, without ever applying *Arbaugh*'s clear-statement test. So Conrail's argument-by-analogy fails.

B

Although the District Court incorrectly dismissed Guerra's complaint for lack of jurisdiction, Conrail moved in the alternative before the District Court for summary judgment under Rule 56. We "may affirm the District Court's order on any basis supported by the record," *United States v. Rivera-Cruz*, 904 F.3d 324, 326 (3d Cir. 2018) (internal quotation marks and citation omitted), and we will do so if "there is no genuine issue as to any material fact and … [Conrail] is entitled

15

to judgment as a matter of law." *Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 143 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

As explained above, FRSA's statute of limitations is simply a nonjurisdictional claim-processing rule. But it still has teeth. *See* 49 U.S.C. § 20109(d)(2)(A)(ii); *Kwai Fun Wong*, 135 S. Ct. at 1632 (explaining "statute-of-limitations language, saying only what every time bar, by definition, must: that after a certain time a claim is barred"). In other words, "any alleged unfavorable personnel action occurring more than 180 days before [Guerra] file[d] an OSHA complaint is not actionable." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1211 (10th Cir. 2018); *see Mercier v. U.S. Dep't of Labor*, 850 F.3d 382, 388 (8th Cir. 2017) ("[T]he ALJ correctly found that any adverse employment action that occurred [more than 180 days before the complaint was filed] would not be actionable due to the operation of the statute of limitations.").[6]

So we must determine when Guerra first filed his complaint with OSHA. He says that his lawyers filed it by first-class mail on May 10, 2016. But OSHA found that it first received the complaint on November 28, 2016, when Guerra's lawyers contacted OSHA by email. The former date would have been timely, the latter would not. Guerra tries to escape this pickle by invoking the common-law mailbox rule.

In general, statutory filing conditions require "actual, physical delivery." *Phila. Marine*, 523 F.3d at 147. Since this is doable by mail, we apply the common-law mailbox rule "[t]o help determine when the pertinent document was physically delivered." *Id.* The gist of this rule is that, "if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed … that it reached its destination at the regular time, and was received by the

---

[6] Guerra has never argued that equitable tolling would save his otherwise untimely complaint to OSHA. For that reason, we need not decide whether the FRSA filing deadline is a "mandatory" claim-processing rule that must be applied if raised. *See Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714–15 (2019). We take no position here on whether such tolling may be available or appropriate in other similar cases.

person to whom it was addressed." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014) (internal quotation marks and citation omitted).

The record contains affidavits from Guerra's lawyers—Lawrence Katz and Robert Myers. Katz verified that his normal practice was, after preparing a cover letter and complaint, to instruct his assistant to send them "by both certified mail and Fax." App. 141, 159. He also noted that, on top of certified mail and fax, these documents "would also sometimes be transmitted by ordinary first-class mail." *Id.* But Katz and Myers conceded that Guerra's complaint was supposedly sent only by first-class mail. This discrepancy, they say, was "due to a clerical oversight." Appellant's Br. 9; *see id.* at 21.

This evidence is not enough to invoke the mailbox rule's presumption of delivery. To be sure, "receipt can be proven circumstantially by introducing evidence of business practices or office customs related to mail," at least where the affiant has "personal knowledge of the procedures in place at the time of the mailing." *Lupyan*, 761 F.3d at 319–20 (internal quotation marks and citations omitted). But Guerra's circumstantial evidence of his lawyers' typical mailing procedures is irrelevant because, "due to a clerical oversight," those procedures were admittedly not followed. So this case is not like *Lupyan*, where the sender produced two affidavits, both of which showed "personal knowledge of [the sender's] customary mailing practices," and one of which was by the sender's employee who "swore that she personally prepared the Letter and placed it in the outgoing mail bin." *Id.* at 320. Nor is it like *Philadelphia Marine*, where the sender produced meaningful, relevant circumstantial evidence such as testimony of an express acknowledgement of receipt and a computer printout apparently reflecting metadata of the letter's drafting date. *See* 523 F.3d at 153.

Here, by contrast, we have only Katz's and Myers's bare assertions—artfully phrased in the passive voice—that Guerra's complaint "was transmitted" to OSHA by first-class mail. App. 148, 157; *see* App. 153. But neither affiant was involved in the mailing process. We agree with the District

Court that these unsupported, second-hand accounts cannot invoke the mailbox rule's presumption.[7]

Guerra protests that this logic is "blatantly unreasonable" because it puts "such a high evidentiary burden on the employee." Appellant's Br. 25. We disagree. The person or entity mailing a complaint, letter, notice, or other document is in the best position to control whether direct evidence exists later to confirm that mailing if it becomes an issue. *See Lupyan*, 761 F.3d at 322 ("In this age of computerized communications and handheld devices, it is certainly not expecting too much to require businesses that wish to avoid a material dispute about the receipt of a letter to use some form of mailing that includes verifiable receipt when mailing something as important as a legally mandated [complaint]."). Guerra failed to do that here, and his circumstantial evidence is too thin to create a genuine issue of material fact.

---

[7] Even if Guerra's evidence were reliable enough to merit a presumption of delivery, at most, that presumption would be "very weak." *Lupyan*, 761 F.3d at 319–20 (holding that only a weak presumption exists "where delivery is sent via regular mail, for which no receipt, or other proof of delivery, is generated"). Stacked against OSHA's denial of receipt, that presumption would disappear. *Id.* at 320–21. And the remaining competing evidence would not create a genuine issue of material fact about whether OSHA "actual[ly], physical[ly]" received the complaint that could prevent summary judgment. *See Phila. Marine*, 523 F.3d at 147. The dated cover letter Guerra produced at best suggests nothing more than that it was drafted (not necessarily sent) before the administrative deadline. App. 161. But unlike the metadata in *Philadelphia Marine*, the bare letter does not reliably establish the date of drafting. And OSHA's denial of receipt is strengthened by its practice of tracking correspondence and its unavailing search for a trace of Guerra's letter. *See Lupyan*, 761 F.3d at 322 ("[I]t may be routine business practice to log incoming mail. In such cases, the absence of an entry in a mail log near the time that mail would likely have arrived, can be used to establish that mail was not received.").

## IV

FRSA's 180-day statute of limitations is a nonjurisdictional claim-processing rule. The District Court thus incorrectly held that it lacked subject matter jurisdiction. But Guerra's claim still fails because he has not produced enough reliable evidence to invoke the common-law mailbox rule. So his administrative complaint was untimely and his claim is barred. We will thus affirm the District Court's judgment on other grounds.